IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| KATHERINE FASH, | ) | CV 05-6249-HU |
| | ) | |
| Plaintiff, | ) | |
| | ) | FINDINGS AND |
| v. | ) | RECOMMENDATION |
| | ) | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |

BRENDA S. MOSELEY
320 Central Ave. Suite 422
Coos Bay, OR 97420
     Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 SW Third Avenue, Ste 600
Portland Oregon 97204

1 - FINDINGS AND RECOMMENDATION

DAVID R. JOHNSON
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Ste 2900 M/S 901
Seattle Washington 98104
     Attorneys for Defendant

HUBEL, Magistrate Judge:

Plaintiff Katherine Fash brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for supplemental security income payments (SSI) under Title XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383©)(3). The Commissioner's final decision should be affirmed.

## BACKGROUND

Ms. Fash was born May 7, 1955 and was forty-eight years old at the time of the administrative hearing. She graduated from high school and earned a degree in cosmetology. She worked as a beautician in a nursing home in Colorado and the job often required lifting residents to the shampoo bowl. Ms. Fash complained of back problems related to the lifting. An examination and diagnostic x-rays in 1990 revealed degenerative disk disease of the lumbar spine. Tr. 203. [1] She alleges onset of her disability as August 15, 1991. Tr. 72. Ms. Fash applied for SSI on October 25, 2000. Because SSI payments cannot be made retroactively, she cannot receive benefits for any period before she filed her application, even if she became disabled earlier. 20 C.F.R. §§ 416.203, 416.501. Social Security Ruling (SSR) 83-20. Ms. Fash was diagnosed with degenerative changes in the lower lumbar spine in 1990. Tr. 203. Her primary care physician diagnosed mild

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

hypothyroidism in 2001, and fibromyalgia and depression in 2002. Tr. 179-180, 191. A hearing was held before an Administrative Law Judge (ALJ) on January 14, 2004. The ALJ issued an opinion April 12, 2004 finding Ms. Fash was not disabled. The ALJ's opinion is the final decision of the Commissioner.

## DISABILITY ANALYSIS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. An impairment is severe if it significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 416.921. Basic work activities are the abilities and aptitudes necessary to do most jobs. *Id.* These include physical functions, such as seeing, hearing, speaking, walking, standing and sitting, and mental functions, such as understanding, remembering, using judgment and responding appropriately to work situations. 20 C.F.R. § 416.921(b). An impairment can be found "not severe" only if it is a minor abnormality that has no more than minimal effect on the claimant's ability to work. *Smolen v. Chater*, 80 F3d. 1273, 1290 (9th Cir. 1996). The inquiry at step two is a *de minimis* screening tool to dispose of groundless claims. *Id.* The burden to show a medically determinable severe impairment is on the claimant. *Yuckert*, 482 U.S. at 146. Although the ALJ found that Ms. Fash has some medically severe impairments, she challenges the ALJ's determination that she does not have a severe mental health impairment.

3 - FINDINGS AND RECOMMENDATION

At step three, the Commissioner must determine whether the claimant has impairments that meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.* at 141; 20 C.F.R. § 416.920(d). The criteria for these listed impairments, also called Listings, are enumerated in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments). If the ALJ determines that the claimant's impairments meet or equal a Listing, the Commissioner will find the claimant disabled without completing the remaining steps in the sequence. At step three in this case, the ALJ determined that Ms. Fash's medically determinable impairments were "not severe enough to meet or medically equal, either singly or in combination" any condition in the Listing of Impairments. Tr. 20. This finding is not challenged.

If the adjudication proceeds beyond step three, the Commissioner must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by his impairments. 20 C.F.R. § 416.945(a); SSR 96-8p. Ms. Fash challenges the ALJ's determination of her RFC.

At step four, the Commissioner must determine whether the claimant retains the RFC to perform work she has done in the past. If the ALJ determines that she retains the ability to perform his past work, the Commissioner will find the claimant not disabled. 20 C.F.R. § 416.920(f). The ALJ determined that Ms. Fash's RFC precluded her from performing her past relevant work and this finding is not challenged.

At step five, the Commissioner must determine whether the claimant can perform work that exists in the national economy. *Yuckert*, 482 U.S. at 141-142; 20 C.F.R. § 416.920(e), (g). Here the

4 - FINDINGS AND RECOMMENDATION

burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the Commissioner meets this burden, then the claimant is not disabled. 20 C.F.R. § 416.920(g). Ms. Fash challenges the Commissioner's finding at step five.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Commissioner of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence and resolving ambiguities. *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Tackett,* 180 F.3d at 1098. The Commissioner's decision must be upheld, even if the "evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-1040. (citations omitted).

## THE ALJ'S FINDINGS

The ALJ determined that Ms. Fash's fibromyalgia and lumbar degenerative disc disease were severe impairments. However, he found her depression had no "significant mental functional restrictions," and was not severe. Tr. 19, 24. He determined her conditions did not meet or medically equal an impairment in the Listings of Impairments. Tr. 19-20. The ALJ assessed Ms.

5 - FINDINGS AND RECOMMENDATION

Fash's RFC as limited to sedentary work with restrictions. The restrictions include lifting no more than ten pounds occasionally; standing or walking for 2 hours of an 8 hour day; sitting for 6 hours of an 8 hour day, with a sit stand option; and no climbing ropes or scaffolds. The ALJ determined that Ms. Fash was unable to perform her past relevant work as a beautician which was classified as light skilled work. Tr. 22.

In determining the RFC, the ALJ found Ms. Fash's complaints exaggerated and not fully credible. Tr. 20. The ALJ noted there is no record of medical treatment for Ms. Fash between 1991, the date she alleges onset of disability, and 2000. The ALJ noted that laboratory findings were negative and "x-rays and MRIs have revealed 'mild' findings not consistent with the level of pain and functional restrictions asserted by the claimant." Tr. 20. He found her report during her disability evaluation of being able to stand for only ten minutes at a time contradicted by her statement to her physician nine months later that "she was 'walking one mile a day and having increased energy' after going on thyroid medications." *Id.* The ALJ also noted the escalation of Ms. Fash's symptoms during the pendency of these proceedings have led various providers to assume "a somatoform component given the absence of objective findings." Tr. 21. He further stated:

> Dr. Muller noted the claimant was in "moderate distress even without any provocation," ...Her claims of double vision have not stopped her from driving, and other somewhat bizarre symptoms such as inability to open her hand, inability to sweat, nausea due to rib pain, balance problems, and feeling like bugs are crawling on and biting her are all very dramatic, but there is no objective medical basis for such symptoms. Recently, the claimant has taken to using a cane, but there is no indication that this is medically necessary, or has been medically prescribed. Similarly, she has complained of diffuse sensory losses, but no neurological abnormalities are documented in the record.

Tr. 20. The ALJ noted that Ms. Fash reported working approximately 32 hours a week from 1986 to 1992 and had no posted earnings after 1985. This data "clearly suggest that she failed to report

6 - FINDINGS AND RECOMMENDATION

her self employment earnings for Social Security and income tax purposes. This avoidance of tax liabilities also demonstrates her propensity to distort facts for secondary gain purposes." Tr. 21.

The ALJ cited the testimony of the Vocational Expert (VE) at the hearing that an individual with Ms. Fash's RFC, age, education, and past relevant work history could work in a number of jobs. The jobs present in significant numbers in the national economy include food and beverage order clerk, charge account clerk, and patcher. Tr. 24. The ALJ determined that Ms. Fash could make an adjustment to work that exists in significant numbers in the economy and was not disabled. Tr. 24.

## DISCUSSION

Ms. Fash asserts the ALJ erred in assessing the severity of her mental impairments. She also contends the ALJ failed to adequately consider all her impairments before assessing the credibility of her subjective complaints. Ms. Fash further asserts that the ALJ failed to give adequate weight to the opinions of her medical treating sources. Finally, Ms. Fash contends that the ALJ failed to include all of her impairments in the hypothetical question posed to the VE during the administrative hearing.

I.   **Medical Source Statements**

     A.   **Medical Background**

Ms. Fash was examined by Dr. Patterson in Grand Junction Colorado in 1990 and he diagnosed degenerative disc disease of the lumbar spine. Tr. 203. Ms. Fash asserts disablity from 1991, but there are no medical records between 1990 and 2001. After her application for SSI was filed, she was examined by Dr. Bufton, an agency consultant, on January 22, 2001. Dr. Bufton noted chronic back pain, numbness, weakness, normal gait and that found Ms. Fash's sensory loss

was nonanatomic. Tr. 161-162. An x-ray of the lumbar spine taken on January 15, 2001 showed degenerative changes in the lower lumbar spine, disk space narrowing and osteophyte formation at L4-5 and L5-S1. Tr. 165. Dr. Spray, a state agency consultant, reviewed the medical record and determined an RFC of light work was appropriate. Dr. Eder, another state agency consultant, confirmed Dr. Spray's findings. Tr. 166-174.

Ms. Fash began treatment with Dr. Carter, her primary care physician, in September, 2001. At her initial visit, Dr. Carter noted a flare up in her back problems, depression, sleep difficulties, irritable bowel syndrome, fatigue, and back pain suggestive of fibromyalgia. Tr. 192-194. After ordering laboratory tests, he prescribed medication for mild hypothyroidism. Tr. 191. In October, 2001, Dr. Carter saw Ms. Fash for back pain, but noted her energy improved with the thyroid medication and she was able to walk a mile. Tr. 190. Dr. Carter continued to treat her mild hypothyroidism, GERD, and low back pain. He prescribed medications for these conditions. Tr. 188-191. Dr. Carter referred Ms. Fash to Dr. Larson for a gastroscopy in January of 2002. An ultrasound test revealed a small hiatal hernia with GERD, cholelithiasis (gall stones) and a cyst in the mid abdomen. Tr. 199. In the summer of 2002, Dr. Carter ordered more tests, specifically for rheumatoid arthritis, as he noted Ms. Fash's complaints could be "other syndromes." Tr. 182. The tests were negative for a rheumatoid factor and Dr. Carter continued to treat Ms. Fash through 2003 for fibromyalgia, hypothyroidism, and depression. Tr. 179-181.

In March 2003, Ms. Fash visited Dr. Carter three times. He treated her for a flare up of fibromyalgia that was not helped with prednisone and noted symptoms of increased depression, fatigue, shortness of breath, numbness of hands, feet, and lips, decreased sleep and reported intermittent fevers. Tr. 176-178. Dr. Carter ordered cardiac and pulmonary laboratory tests for Ms.

Fash which reported normal results. Tr. 212, 213. Dr. Carter completed an RFC form in March, 2003 stating that Ms. Fash met the criteria for fibromyalgia and was unable to work due to her symptoms. Tr. 205-207. In May, 2003, Ms. Fash complained of increased symptoms including double vision, pain in her eyes, balance problems, numbness, itchy skin feeling like "bugs crawling over her and biting her," shakiness, difficulty walking, fatigue, headaches, and fever. Dr. Carter noted that Ms. Fash refused to believe all of her symptoms were related to fibromyalgia. Dr. Carter further noted "she obviously has a psychiatric problem with depression. Depression may be involved with her somatic complaints." Tr. 213. Dr. Carter made a referral to Dr. Muller because of the reported fevers. In June, 2003 Dr. Muller assessed fibromyalgia with the possibility of underlying inflammatory disease, and suspected insulin resistance syndrome. Her fevers were resolved with a change in thermometers. Tr. 210.

Dr. Wahl, a licensed psychologist, examined Ms. Fash in July, 2003 for the state agency disability evaluation. Dr. Wahl diagnosed depressive disorder, NOS, secondary to physical pain, and an overall Global Assessment of Functioning (GAF) score of 65.[2] Tr. 222-223. Dr. Wahl found only mild limitations from depression in Ms. Fash's functioning and noted "she had many friends on the computer. She is quite active on the internet." Tr. 221. Dr. LeBray, an agency consultant examined Ms. Fash's records and supported Dr. Wahl's diagnosis of a GAF of 65 noting that Ms. Fash took antidepressant medication which reduced the severity of her depression. Tr. 214.

---

[2]The GAF is a scale from 1-100, in ten point increments, that is used by clinicians to determine the individual's overall functioning. A GAF of 61-70 indicates "Some mild symptoms (e.g. depressed mood and mild insomnia) OR some difficulty in social, occupational or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships." The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. 2000) (DSM-IV).

Ms. Fash believed she might have multiple sclerosis (MS) and Dr. Bernstein, a neurologist, ordered MRIs. The medical records contain an MRI report from Dr. Bernstein dated September 4, 2003 that states the MRI indicated no evidence of MS. Tr. 254-256. There are no other reports from Dr. Bernstein in the file.

Ms. Fash was referred to Coos County Mental Health Services by Dr. Carter and was diagnosed with an undifferentiated somatoform disorder with a GAF of 49[3] by Joanne Rutland, a Psychiatric Mental Health Nurse Practitioner (PMHNP). Tr. 240-245. Ms. Rutland noted that Ms. Fash was upset that Dr. Bernstein suggested her complaints may be due to somatoform disorder rather than physical disease and she wanted a second opinion. Tr. 246-247, 251-252. Ms. Fash also submitted into the record a Mental Impairment Questionnaire from Syd Wiesel, MSW, a therapist at Coos County Mental Health. Ms. Wiesel is a therapist for Ms. Fash's husband, and provided some couple counseling and individual counseling for Ms. Fash. There are no treatment records from Ms. Wiesel. Ms. Wiesel indicated on the questionnaire checklist that Ms. Fash would miss four days of work a month and suffered from depression and anxiety. Tr. 238. She also noted Ms. Fash could not perform work without interruption or perform at a consistent pace. Tr. 239.

B.  **Assessment of Mental Impairment**

Ms. Fash argues that the ALJ erred in assessing the severity of her mental impairments by relying on the assessment of Dr. Wahl, an examining psychologist. Dr. Wahl diagnosed depressive disorder, NOS, secondary to physical pain, a GAF of 65, and only slight limitations in mental ability to perform work. Ms. Fash first asserts the examination by Dr. Wahl was limited because it was

---

[3]A GAF of 41-50 indicates "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR a any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). DSM-IV at 34.

10 - FINDINGS AND RECOMMENDATION

"ordered" by an agency of the State of Oregon and was not the full-scale diagnostic test usually ordered by the Social Security Administration (SSA). However, the SSA regulations provide for SSA to contract with the state agency to arrange these examinations. *See* 20 C.F.R. § 416.903. There is no evidence that Dr. Wahl's examination differed in any way from this normal procedure. Ms. Fash also asserts that the examination by Dr. Wahl did not include an evaluation of her medical record, which she implies would have at least raised the issue of a somatoform disorder. However, as the Commissioner has noted, the medical notes indicate the materials provided to Dr. Wahl by the state agency included Ms. Fash's medical file, "to be reviewed," and a form, Medical Source Statement of Ability to Do Work-Related Activities (Mental), "to be filled out." Tr. 219. Dr. Wahl's report, "A Comprehensive Psychodiagnostic Evaluation for Katherine Fash," includes the completed form and discusses Ms. Fash's medical history. Tr. 216-223. Dr. LeBray, the state agency reviewing psychologist, supported Dr. Wahl's diagnosis and noted that Ms. Fash was treated with prescription antidepressant medication and had symptoms of anxiety. Dr. LeBray also noted only mild functional limitations.

Ms. Fash contends that contrary to Dr. Wahl's assessment, she suffers from somatoform disorder. "The claimant bears the burden of proving that she is disabled. She must present 'complete and detailed objective medical reports of her condition from licensed medical professionals.'" *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999) (citations omitted). The diagnosis of undifferentiated somatoform disorder was made by Joanne Rutland, a PMHNP at Coos County Mental Health.[4]

---

[4] Undifferentiated Somatoform Disorder is characterized by one or more physical complaints that persist for six months or longer. "Frequent complaints include chronic fatigue, loss of appetite, or gastrointestinal or genitourinary symptoms. These symptoms cannot be fully explained by any known general medical condition or the direct effects of a substance . . . or the physical complaints or resultant impairment are grossly in excess of what would be expected

11 - FINDINGS AND RECOMMENDATION

Physicians and licensed psychologists are medical sources. Nurse practitioners, however, are "other sources." 20 C.F.R. § 416.913. Nurse practitioners are not able to provide evidence to establish impairment unless supervised by a treating physician. *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996). There are no signatures or notes from a physician or psychologist at Coos County Mental Health in the medical record. A diagnosis by a nurse practitioner is not medical evidence.

Ms. Fash asserts, however, that the diagnosis of somatoform disorder was supported by the medical notes of Dr. Carter, her primary care physician, Dr. Bufton, and Ms. Wiesel. Dr. Carter did not diagnose Ms. Fash with somatoform disorder. He characterized her complaints, particularly her complaints of escalating symptoms beginning in May, 2003 as "somatic." Tr. 213. Dr. Carter completed her RFC form in March of 2003 and stated her limitations were due to fibromyalgia, and noted she had no other diagnosed impairments. Tr. 205. Dr. Bufton did not diagnose Ms. Fash with a somatoform disorder. Dr. Bufton noted in January of 2001 that the sensory loss reported by Ms. Fash was "nonanatomic." Tr. 161-162. These notations in the physicians' notes regarding somatic or possible somatic complaints, without a finding of an impairment or a diagnosis, are insufficient to establish the existence of a medically determinable impairment. *Ukolov v. Barnhart,* 420 F.3d 1002, 1006 (9th Cir. 2005). Ms. Wiesel, a mental health provider at Coos County Mental Health, is not a licensed psychologist, and is unable to provide medical evidence to contradict the diagnosis of Dr. Wahl. 20 C.F.R. § 416.913. There are no treatment notes from Ms. Wiesel in the record, only a

---

from the history, physical examination, or laboratory findings. (Criterion B). The symptoms cause clinically significant distress or impairment in social, occupational, or other important areas of functioning (Criterion C). . . The symptoms are not intentionally produced or feigned . . . DSM-IV at 490, 491.

12 - FINDINGS AND RECOMMENDATION

form completed by her. Ms. Wiesel indicated on the form that she provided individual counseling for Ms. Fash due to depression and anxiety. Tr. 238-239.

The ALJ found that Ms. Fash had depression and accepted the uncontroverted opinion of the examining licensed psychologist that Ms. Fash's functional limitations from depression were mild. He found no medical evidence of other mental functional limitations to her activities of daily living or ability to maintain social functioning. The ALJ found only mild difficulties in maintaining concentration, persistence and pace. He found no episodes of decompensation. The ALJ did not find that Ms. Fash had a somatoform disorder and there is no diagnosis of somatoform disorder from a medical source in the record. The ALJ's assessment of the medical findings is reasonable and should be upheld.

## II.     RFC Assessment

Ms. Fash contends the ALJ failed to accurately assess her RFC because he did not adequately consider the effects of all of her impairments before assessing the credibility of her subjective complaints of pain and fatigue. Ms. Fash also asserts the ALJ failed to give proper weight to the opinion of her treatment providers.

### A.     Effects of Impairments

Ms. Fash asserts that although the ALJ did not find her mental impairments severe, he was still required to consider the effects of these impairments in combination with her other impairments. All medically determinable impairments must be considered in the sequential analysis. 20 C.F.R. § 416.923. As noted above, the ALJ accepted the opinion of Dr. Wahl that Ms. Fash's depression caused only mild functional limitations. He found no medical evidence of other mental functional limitations to her activities of daily living or ability to maintain social functioning. The ALJ found

only mild difficulties in maintaining concentration, persistence and pace. He found no episodes of decompensation. Tr. 19. The ALJ also noted in his decision that he considered the effects of all her impairments in determining her functional limitations, including pain and, as discussed below, determined whether her symptoms were credible and supported by the record as a whole. Ms. Fash's RFC reflects severe limitations, however, it does not preclude all work. Contrary to Ms. Fash's assertions, determinations of credibility are necessary before determining the functional limitations imposed by subjective complaints. The ALJ determines an RFC based upon limitations for which there is a record. "Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary. *See* SSR 96-8p." *Bayliss v. Barnhart,* 427 F.3d 1211,1217 (9th Cir. 2005).

### B. Credibility

Ms. Fash does not directly challenge the ALJ's credibility findings. Rather, she seems to imply if the ALJ accepted a somatoform diagnosis, that diagnosis would account for the inconsistencies between Ms. Fash's alleged symptoms and the medical record. The ALJ must assess the credibility of the claimant regarding the severity of symptoms only if the claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms. *Smolen*, 80 F3d at 1281-1282; *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986). Ms. Fash has medically determinable impairments which could produce some of her symptoms. As noted above, her physician and examining specialists could not find an underlying cause for some of her complaints. As a result, the medical record indicates that some of her symptoms were regarded as "somatic" and " nonanatomic."

When there is an underlying impairment and no evidence of malingering, an ALJ may discredit a claimant's testimony regarding the severity of symptoms by providing clear and convincing reasons for doing so. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Smolen*, 80 F.3d at 1283, 1284. The ALJ may consider objective medical evidence and the claimant's treatment history as well as any unexplained failure to seek treatment or follow a prescribed course of treatment. *Id.* at 1284. The ALJ may also consider the claimant's daily activities, work record and the observations of physicians and third parties with personal knowledge about the claimant's functional limitations. *Id.* In addition, the ALJ may employ ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms and other statements by the claimant that appear to be less than candid. *Id. See also* SSR 96-7p.

The ALJ found Ms. Fash's testimony and allegations regarding the severity of her symptoms not fully credible. As discussed above in the ALJ Findings section, he correctly noted the medical record did not support various symptoms, the level of pain, and functional restrictions asserted by Ms. Fash. Her primary care physician and examining specialists were unable to determine a physical cause of her more severe symptoms. The ALJ also noted Ms. Fash made inconsistent statements regarding her condition, expressing more severe symptoms to the disability examiner than to her physician. The ALJ noted further that many of Ms. Fash's more dramatic symptoms began to escalate during the process of the claim which led her healthcare providers to note the complaints were "somatic" given the absence of a diagnosed medical condition. The ALJ also found her failure to report her self employment earnings a further indication that her statements may not be completely candid.

The ALJ articulated clear and convincing reasons supported by substantial evidence in the record for discrediting Ms. Fash's assertions that she has limitations in excess of those in her RFC assessment and that she cannot perform any work.

### C.    Dr. Carter

Ms. Fash argues that the ALJ erred by failing to give adequate weight to the opinion of Dr. Carter regarding her limitations from fibromyalgia. Ms. Fash's argument that she has fibromyalgia is not in dispute. Although the ALJ expressed some doubts about the diagnosis, he accepted Dr. Carter's diagnosis of fibromyalgia. Dr. Carter completed a checklist RFC form for Ms. Fash in March, 2003 and indicated a "less than sedentary" RFC where Ms. Fash could work up to ten hours a week. In addition, other limitations included hourly breaks and a likelihood of missing more than four days a month from work. Tr. 205-207.

The ALJ determined that this RFC opinion was not entitled to controlling weight. Dr. Carter's RFC assessment is contradicted by the assessment of Dr. Spray. A treating physician's opinion, even if controverted, can only be rejected with specific and legitimate reasons supported by substantial evidence. *Reddick v. Chater*, 157 F.3d 715, 725. (9th Cir. 1998). The ALJ noted Dr. Carter checked a box on the form indicating that Ms. Fash's symptoms met the American College of Rheumatology listings for fibromyalgia, contrary to the medical records. In addition, the ALJ noted Dr. Carter checked boxes indicating symptoms not in the record, such as cognitive dysfunction and panic attacks. He further noted that no rationale was provided for any of the restrictions listed. The ALJ "may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings. *Batson,* 359 F.3d at 1195, citing *Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992) and *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001).

16 - FINDINGS AND RECOMMENDATION

The ALJ further noted that Ms. Fash was seen by Dr. Carter three times in March 2003, the month that Dr. Carter completed the form. During March 2003, Ms. Fash reported increasing symptoms at each visit. The ALJ determined that Dr. Carter completed the form based in part on Ms. Fash's subjective complaints, which the ALJ found not credible. The ALJ may reject a physician's disability opinion that is premised on the claimant's subjective symptom reports which the ALJ has already properly discredited. *Tonapetyan*, 242 F.3d at 1149, citing *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).

The ALJ performed a reasonable evaluation of the medical evidence and provided specific, legitimate reasons based on substantial evidence for rejecting parts of Dr. Carter's opinion.

**D.    Lay Witness Statements**

Ms. Fash asserts that the ALJ failed to properly consider the opinions of her other treating sources. Friends, family members, and others in a position to observe a claimant's symptoms and daily activities are competent to testify as to the claimant's condition. *Dodrill*, 12 F3d at 918, 919. Such testimony cannot be disregarded without comment. *Nguyen v. Chater*, 100 F3d 1462, 1467 (9th Cir 1996). If the ALJ wishes to discount lay witness testimony, he must give reasons that are germane to the witness. *Id.* Inconsistency with medical evidence is one such reason. *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir.2001).

The ALJ did not disregard the lay witness testimony without comment. He considered the "Mental Impairment Questionnaire" completed by Ms. Wiesel and determined it had no "meaningful probative value." The ALJ noted there were no treatment records provided to support the opinions in the questionnaire. Ms. Wiesel was a therapist for Ms. Fash's husband and provided couples counseling before starting individual therapy with Ms. Fash. Ms. Wiesel is not a medical source,

17 - FINDINGS AND RECOMMENDATION

limiting the value of the diagnostic aspects of her opinions. The ALJ also found Ms. Wiesel's diagnostic opinions were contradicted by the findings of Dr. Wahl. Ms. Wiesel also noted that she observed a deterioration in Ms. Fash's physical condition, specifically, Ms. Fash's use of a cane and her self-reports of increased symptoms. The ALJ determined that Ms. Wiesel had endorsed Ms. Fash's subjective complaints at face value, complaints which the ALJ found not credible. As noted above, the ALJ did not accept the diagnostic opinion of Joanne Rutland, the PMHNP, because nurse practitioners are not able to provide medical evidence. Ms. Rutland's opinion was also contradicted by Dr. Wahl, the examining licensed psychologist. The ALJ provided reasons for discounting the testimony of Ms. Fash's treatment sources.

In summary, Ms. Fash's RFC does not reflect any vocationally significant functional limitations from mental impairments. The ALJ acknowledged that Ms. Fash has significant limitations due to her fibromyalgia and lumbar degenerative disk disease and her RFC of sedentary work reflects these limitations. The ALJ rejected Ms. Fash's assertion that these limitations are so severe that she cannot work for the reason discussed above. The ALJ is not required to include limitations not supported by the record or based upon subjective complaints which he finds not credible. *Bayliss,* 427 F.3d at 1217. The ALJ's interpretation of the evidence to determine Ms. Fash's RFC is reasonable and should be upheld. Even if the interpretation asserted by Ms. Fast were equally reasonable, the court cannot substitute it for that of the Commissioner. *Batson*, 359 F.3d at 1193; *Andrews*, 53 F.3d at 1039-40.

### III.    Adequacy of the Vocational Evidence

Ms. Fash contends the ALJ erred by failing to include all of Ms. Fash's impairments in the hypothetical question posed to the VE who testified at the hearing. Vocational expert testimony based

on a hypothetical question that does not reflect all of the claimant's limitations has no evidentiary value. *Embrey v. Bowen*, 849, F.2d 418.422 (9th Cir. 1988). Ms. Fash alleges that her nonexertional limitations caused by her depression and pain were not included. She contends her nonexertional limitations are supported by the medical source statement of Dr. Carter, the statements from Ms. Wiesel, and her own testimony.

      This contention cannot be sustained because the ALJ properly evaluated that evidence and reached an RFC assessment that reflected the limitations the evidence reasonably supported. The ALJ was not required to pose a hypothetical that contained limitations not supported by substantial evidence in the record. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). He elicited testimony from the VE with a hypothetical question that included all the limitations in his RFC assessment. The VE testified that there were jobs in the national economy that Ms. Fash could perform based on her RFC, age, education, and experience. It was proper for the ALJ to rely on the VE's answer to a hypothetical that contained all of the limitations supported by substantial evidence. *Bayliss,* 427 F. 3d at 1217-1218. Ms. Fash has failed to present any basis for rejecting the vocational testimony.

///

///

///

///

## RECOMMENDATION

Based on the foregoing, the Commissioner's determination that Ms. Fash does not suffer from a disability and is not entitled to SSI payments under the Social Security Act is based on correct legal standards and supported by substantial evidence. The Commissioner's final decision should be affirmed and the case should be dismissed.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due August 30, 2006. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due September 13, 2006, and the review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

DATED this 15th day of August, 2006.

/s/ Dennis James Hubel
Dennis J. Hubel
United States Magistrate Judge